|  |  |  |
|---|---|---|
| **ALVIN CARR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **No. 05 C 0678** |
| v. | ) | |
| | ) | **Paul E. Plunkett, Senior Judge** |
| **AARON RICE and NIKKI ROBINSON,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM

Alvin Carr ("Plaintiff") filed a seven count complaint and alleges Defendants violated 42

U.S.C. § 1983. In Counts I and III, Plaintiff claims parole officers, Aaron Rice and Nikki Robinson

("Defendants"), violated his Fourth and Fourteenth Amendment rights to be free from false arrest,

wrongful imprisonment and malicious prosecution. In Counts II and IV, Plaintiff also alleges that

Defendants were guilty of tortious conduct under Illinois law. Counts V, VI and VIII are against

another Defendant, Protocol. However, because Protocol filed bankruptcy on January 27, 2006, we

determined that this case should be stayed only as to Defendant Protocol Services Company and

would proceed as to Defendants Rice and Robinson. Before us is Defendants' Federal Rule of Civil

Procedure ("Rule") 56 motion for summary judgment. Although the question is not free from

difficulty, we conclude that Defendants' motion for summary judgment should be granted.

1

## Factual Background

Unless otherwise noted, the following facts are undisputed. Plaintiff was convicted of three counts of aggravated sexual abuse in 2002 and, after serving a portion of his three year and nine month sentence, was released on a mandatory supervised release ("MSR") program on September 4, 2003. (Defs.' Mot. Summ. J., L.R. 56.1(a)(3)(A) ¶ 1, Defs.' Mot. Summ. J., L.R. 56.1(a)(3)(B) ¶ 4.) As a condition of his release, Plaintiff signed a MSR agreement, wherein he agreed to submit to "Close Supervision Electronic Detention," which required Plaintiff to remain in his home unless he received permission from his parole officer to be on leave. (Defs.' Mot. Summ.J., L.R. 56.1(a)(3)(B) ¶ 6,8,9.) Once Plaintiff obtains such permission, it is his responsibility to return on or before the hour set for the end of the permitted leave time. In this agreement, Plaintiff also acknowledged that violating the terms of the electronic detention could subject him to prosecution. (*Id.* ¶ 10, 14.) AMS, a company contracted by the Illinois Department of Corrections, serves as a central location where parole officers communicate with parolees through a message system. (Pl.'s LR 56.1 (b) ¶ 1.) Once a parolee requests leave, it is his also responsibility to check and confirm those hours of leave that the parole officer has approved. (Defs.' Mot. Summ. J., L.R. 56.1(a)(3)(B) ¶ 20.)

In March 2004, Plaintiff was late returning from authorized leaves on multiple occasions, but each time, before or within minutes of the expiration of his authorized leave, he called AMS to inform his parole officer of his location and reason for tardiness. (Defs.' Mot. Summ. J., L.R. 56.1(a)(3)(B) ¶ 12, Ex. F-2 at 28-33,36.) Later that month, because of his grandmother's death, Plaintiff requested leave or "movement" for March 27 and March 28. (*Id.* 16.) Although Plaintiff says he was given approval to remain on leave until midnight, Plaintiff's parole officer states that

he granted a portion of Plaintiff's requested leave and personally told Plaintiff that he was required

to return from his leave on March 27, 2004 at 9:00 p.m. (*Id.* ¶¶ 17-21, 24.) The AMS log confirms

that the authorized leave was 3:00 p.m.-9:00 p.m. (Def.'s Mot. Summ. J. Ex. F-2 at 37.) Per AMS

procedure, an operator placed a phone call to Plaintiff on that date at 10:01 p.m., one hour after the

time he was to return home, but Plaintiff was not home. (*Id.*) Plaintiff, of course, states he did not

call because he believed he could remain on leave until midnight. (Defs.' Mot. Summ.J., L.R.

56.1(a)(3)(B) ¶ 25, 26.) Because AMS was unable to reach Carr at 9:00 p.m., 10:01 p.m., 10:10

p.m., and 10:50 p.m., AMS issued an arrest warrant at 11:10 p.m. and notified parole officer

supervisor, Robinson, that Plaintiff was AWOL. (*Id.* ¶¶ 27, 28; Def.'s Mot. Summ. J. Ex. F at 37.)

Because Plaintiff was a convicted sex offender who reportedly was AWOL for over two hours,

Robinson requested a warrant be issued for his arrest. (*Id.* ¶ 28.) Plaintiff called AMS at 11:13 p.m.

from a cell phone and returned home at 11:48 p.m. on March 27, 2004.[1] Too late, however, since

pursuant to the already issued warrant, Plaintiff was arrested and re-incarcerated on March 28, 2004.

(*Id.* ¶ 30.) Plaintiff waived his preliminary hearing and opted to submit to a full parole review board

("PRB") hearing. (*Id.* ¶ 35.) Rice and Robinson drafted a report and recommendation and submitted

it to the PRB and argued that because Plaintiff was under stress due to his grandmother's death,

Plaintiff should be released and placed under supervision once again. (*Id.* ¶¶ 33, 34.) Plaintiff's full

PRB hearing was held on May 24, 2004, at which time the board followed Defendants'

recommendation and re-released Plaintiff on parole with electronic detention. (*Id.* ¶ 37.)

---

[1]It is odd to say the least that Plaintiff who would only call if he was going to be late called
at 11:13p.m some forty-five minutes before he says he was scheduled to return home, particularly
when he returned home on time according to his perceived authorized time.

## Legal Standard

In order for a party to prevail on a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we may not weigh the evidence or make any credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Additionally, where "undisputed facts give rise to disputed inferences," summary judgment is not appropriate. *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (ruling that "the choice between reasonable inferences from facts is a function of the fact-finder"); *See also Ramirez v. Nutrasweet Co.*, 1997 U.S. Dist. Lexis 17111, at *7 (N.D. Ill. Oct. 27, 1997) ("if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted") (citing *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1366 (7th Cir. 1993)). Initially, the moving party must inform the court of the basis for the motion, but it is then the non-moving party's obligation to present specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e).

4

## Discussion

Plaintiff alleges that his arrest on March 28, 2004, violated his Fourth and Fourteenth Amendments because there was no probable cause to issue a warrant for his arrest, and after his arrest, he was not afforded the process that was due to him.

### Federal Law Claims

Defendants contend that the standard for issuing a warrant for a parolee is a reasonable suspicion standard and they were, therefore, justified in calling for Carr's arrest and detention. Further, Defendants assert that summary judgement is appropriate because Defendants, as government agents, are entitled to qualified immunity from individual liability for civil damages.

We will address the latter first since if Defendants prevail on this basis, the case is over. The affirmative defense of qualified immunity shields an government agents from liability. Government officials performing discretionary functions have qualified immunity from civil damages as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982); *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996). To determine whether qualified immunity exists, we engage in a two-part test. First, we must determine whether facts taken in a light most favorable to Carr indicate that Defendants violated his Fourth Amendment right. *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003). Second, if Plaintiff has shown that a constitutional right is violated, then we decide whether the constitutional standards that are implicated were clearly established at the time of the alleged violation. *Id.* The plaintiff bears the burden of showing that the statutory or constitutional right has been clearly established and "[t]o show this, a plaintiff may point to closely analogous cases establishing that the conduct is unlawful, or demonstrate that the violation is so

5

obvious that a reasonable state actor would know that what he is doing violates the Constitution."

*Morrell v. Mock*, 270 F.3d 1090, 1100 (7th Cir.2001).

Plaintiff claims his Fourth Amendment rights were violated because a warrant was issued for his arrest without probable cause, and Defendants deliberately ignored his constitutional rights. In general, the Fourth Amendment ensures that citizens may not be seized or arrested without a showing of probable cause. U.S. CONST. amend. IV. However, the Supreme Court tells us that parolees' rights are more limited than those of the average citizen. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (stating a parolee may face re-incarceration, without complete procedure and process, if he fails to abide by the conditions of his release.) An example of one restriction that a parolee faces is the lesser, reasonable suspicion standard that is accepted to justify seizure when the public interest outweighs the interest of the individual parolee. *Knox*, 342 F.3d at 657 (stating courts have determined that reasonable suspicion is enough to justify search and seizure when the balance of interests disfavor the parolee); *United States v. Knights*, 534 U.S. 112, 121 (2001). A warrant request is considered to violate the Fourth Amendment, however, where the person requesting the warrant knows that the statements he makes in order to execute the warrant are false. *Knox*, 342 F.3d at 658; *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003). It is the plaintiff's burden to establish that a reasonable person requesting the warrant would have known that there was not sufficient, valid evidence for the warrant to issue. *Beauchamp*, 320 F. 3d at 742-43 (stating plaintiff's rights are violated only if reasonably well-trained officers in their positions should have known that warrant was obtained without sufficient evidence or that the officers, knowingly, intentionally or with a reckless disregard for the truth, made false statements in order to establish reasonable suspicion.)

6

Here, Plaintiff argues there was no reasonable suspicion because he alleges both Rice and Robinson knew that Plaintiff was visiting family until midnight to grieve his grandmother's death. That argument telescopes two separate, but misleading issues. We agree with Plaintiff that his affidavit creates a triable issue of fact as to whether his leave was authorized until 9:00 p.m. or midnight. However, it is also clear as established by Defendants' testimony and AMS logs that they believed that Plaintiff was required to return by 9:00 p.m.

For Plaintiff to prevail, based on the pleadings and evidence provided, a reasonable jury must be able to conclude that Defendants were not mistaken in their belief that the leave expired at 9:00 p.m., but rather they purposefully told Plaintiff to return by midnight while documenting 9:00 p.m. in the logs only to force him to violate his parole. Plaintiff offers no evidence to show us that Robinson maliciously requested the warrant or that any statements Rice or Robinson made with respect to the March 27, 2004 incident were false. It is undisputed that Defendants based their request for a warrant upon the fact that Carr was a convicted sex offender who they apparently believed was unaccounted for during a two-hour period. Each of the previous times Carr was late returning from his movement in March 2004, he telephoned AMS to inform them of his location, reason for tardiness and estimated time of arrival. But tellingly, in the March 27 incident, there was no communication from Carr for a two-hour period after his authorized leave expired. The deviation from his normal practice combined with the seriousness of the aggravated sexual offense for which he was serving prison time motivated Defendants to issue a warrant for Carr's arrest. Aside from his allegation that Defendants were aware that Carr requested leave until midnight for a death in the family, Carr does not offer any evidence to suggest that both Robinson and Rice knew that Carr thought his leave ended at midnight. The AMS log records indicate that movement was authorized

7

until 9:00 p.m. and there is no support to indicate that Defendants purposely suppressed knowledge of Carr's location or that they knowingly made false statements in requesting a warrant. The Defendants were mistaken, but it does not support even an inference that the government agents intentionally or recklessly issued a warrant. Nothing suggests the agents, who actually helped Plaintiff gain leave after the parole violation, ignored his lawful rights.

Moreover, Plaintiff has not directed us to any analogous case law that presents a situation similar to the one at hand, nor has he offered any evidence to suggest that Defendants bore a grudge against Plaintiff or that Defendants were trying to create a trap. To succeed at trial, Plaintiff must establish such an intent, that is, acting with knowing or reckless conduct. We do not believe that a jury could reasonably conclude that Defendants, while performing their duties as parole officers, intentionally or recklessly caused Plaintiff to be re-arrested. Having determined that Plaintiff has not satisfied his burden to establish Defendants' request for the warrant was knowingly or recklessly, Plaintiff has not established that a statutory or constitutional right has been clearly violated. *Morrell*, 270 F. 3d. at 1100.

As to the second step, because we have already determined that Plaintiff does not have a Fourth Amendment claim, there is then no need to continue the qualified immunity analysis. *Saucier*, 533 U.S. 194, 201 (2001) (stating if a violation could not be established even "on a favorable view of the parties' submissions," the second step is not taken.) Consequently, Defendants would be qualifiedly immune from liability on Plaintiff's Fourth Amendment claims and thus, Defendants' motion for summary judgment is granted.

As to Plaintiff's Fourteenth Amendment claims, Plaintiff contends that after he was taken into custody, he was not afforded due process with respect to the hearings that were provided for

8

him. The process that is due to a parolee following a re-arrest is to offer a preliminary hearing as soon as it is convenient after the arrest and then a full revocation hearing that often times occurs long after the re-arrest. *Morrissey v. Brewer*, 408 U.S. 471, 485-487 (1972).

The facts indicate that Carr was presented with a parole violation report by a Stateville correctional officer, and he voluntarily waived his right to a preliminary hearing. Less than two months later, he received a full revocation hearing after which he was once again released on parole. Plaintiff states that had he not chosen to waive his preliminary hearing, he would have been able to present evidence to dispute Defendants assertion that the warrant was justified. For support, Plaintiff points to *Morrissey*, where the Court concluded that part of the due process model is to allow the accused individual a preliminary hearing to determine whether there are grounds to support an alleged parole violation. *See Morrissey*, 408 U.S. 471. Preliminary hearings do serve this purpose and the preliminary hearing is precisely what Plaintiff was offered after his arrest. However, Plaintiff waived the preliminary hearing and in doing so he affirmatively chose to wait to present his evidence at his full hearing.[2] In May 2004, Plaintiff received his full hearing and with Defendants' report and recommendation as support, Plaintiff was released again on parole. We believe that because Plaintiff was offered a preliminary hearing and did in fact receive a full revocation hearing, he was afforded due process which ultimately allowed him to serve his prison sentence on parole outside of the prison gates. Thus, Defendants motion for summary judgment as to the Fourteenth Amendment violations is also granted.

---

[2]Aside from waiver, it is clear that Plaintiff could not have succeeded in demonstrating a lack of reasonable cause to arrest. The officers reasonably believed he was long overdue and felt his prior felony required them to act quickly, mistaken or not.

*State Law Claim*

Having dismissed the federal claims in this suit, the Court declines to exercise its supplemental jurisdiction over plaintiff's state-law claims. 28 U.S.C. § 1367(c)(3).

## Conclusion

Based on the foregoing, Defendants' motion for summary judgement is granted. This is a final and appealable order.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: **JUN 27 2006**